**INTERNATIONAL ROAD FEDERATION,**
Plaintiff,

v.

**EMBASSY OF THE DEMOCRATIC REPUBLIC OF THE CONGO,**
Defendant.

No. Civ.A. 00CV01421 (ESH).

United States District Court, District of Columbia.

March 5, 2001.

Frank M. Northam, Washington, DC, for Plaintiff.

### *MEMORANDUM OPINION*

HUVELLE, District Judge.

Before the Court is plaintiff's motion for entry of default judgment. Plaintiff, International Road Federation, and defendant, the Embassy of the Democratic Republic of the Congo, entered into a Sublease Agreement ("sublease") whereby plaintiff sublet office space at 2600 Virginia Avenue, N.W., Washington D.C. to defendant. Plaintiff brings this action for damages for breach of contract alleging that defendant failed to take possession of the premises and failed to make payments required under the sublease.

■ Defendant is a foreign state. *Underwood v. United Republic of Tanzania*, 1995 WL 46383 (D.D.C. Jan.27, 1995) (holding that "as a matter of law, the embassy of a sovereign nation is a foreign

state"); *Gray v. Permanent Mission of People's Republic of Congo*, 443 F.Supp. 816, 819 (S.D.N.Y.), *aff'd*, 580 F.2d 1044 (2d Cir.1978) (table decision) ("There can be no doubt that the Congo Mission is a foreign state within the meaning of [the FSIA]."). The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, sets forth the standard for granting a default judgment against a foreign state. Section 1608(e) provides that "[n]o judgment of default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). "Congress intended § 1608(e) to provide foreign states protection from unfounded default judgments rendered solely upon a procedural default." *Compania Interamericana Export–Import, S.A. v. Compania Dominicana*, 88 F.3d 948, 950–51 (11th Cir.1996) (citing H.R.Rep. No. 1487, 94th Cong., 2d Sess. 26 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6625). "[T]he FSIA [therefore] requires that in the event of default, a plaintiff must prove both liability and damages ... [which] can be based on submission of affidavits, without the need for live testimony at a hearing." *The Semi Conductor Materials Inc. v. Agriculture Inputs Corp.*, 1998 WL 388503 at \*8 (June 23, 1998 S.D.N.Y..) (citing *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238 (2d Cir.1994)).

### A. Jurisdiction

■ The Court finds subject matter jurisdiction over this action under 28 U.S.C. § 1330(a), and venue is proper under 28 U.S.C. § 1391(f).[1] The Court has personal

---

1. Section 1330(a) provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international

agreement." As discussed below, defendant has waived immunity under the FSIA.

Section 1391(f) provides in relevant part that "[a] civil action against a foreign state as defined in section 1603(a) of this title may be brought (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a sub-

jurisdiction over defendant pursuant to 28 U.S.C. § 1330(b), which provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title." The Court finds that plaintiff effected service under 28 U.S.C. § 1608(a)(1), which provides that "[s]ervice ... shall be made upon a foreign state or political subdivision of a foreign state (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision."

The Sublease Agreement ("sublease") between plaintiff and defendant contains a provision entitled "notices" which states that "[a]ll notices, demands, or requests between Sublessor and Sublessee shall be delivered in person, by certified mail, return receipt requested, or by registered mail ..." and provides addresses for notification. (Ex. 1, ¶ 25.) Plaintiff claims that this provision is a "special arrangement for service" for the purposes of § 1608(a). The Court in *Marlowe v. Argentine Naval Commission*, 604 F.Supp. 703 (D.D.C.1985), found a similar contract provision to constitute a "special arrangement for service" under § 1608(a). The contract in that case provided that "[a]ll notices, requests, demands, or other communications to or upon the respective parties hereto shall be deemed to have been given or made when deposited in the mail,

postage prepaid ..." and provided addresses for the parties to the contract. *Id.* at 704. The Court found that while the provision did not specifically provide for service of legal process, "[s]ervice of process certainly falls under the contractural language of 'notices, requests, demands or other communications to or upon the respective parties.'" *Id.* at 708. *See also Saunders Real Estate Corporation v. Consulate General of Greece*, 1995 WL 598964 at *2 (D.Mass.1995) (finding that service of process "clearly" falls within the lease provision stating "all 'notices shall be effective when delivered in hand or sent by certified mail, return receipt requested....'").[2]

■ While the sublease provided for service on "Dr. Faida M. Mitifu, Embassy of the Democratic Republic of the Congo, 2600 Virginia Avenue, NW, Washington D.C. 20037" (Ex. 1, ¶ 25), this was the address of the subleased premises that defendant had not occupied. Plaintiff therefore served the complaint by certified mail, return receipt requested, on Dr. Mitifu at the Embassy premises at 1800 New Hampshire Avenue. *See* Proof of Service of Complaint (filed Oct. 30, 2000) (return receipt attached). The Court finds that because service at the subleased premises would have been senseless, service at the Embassy's primary location satisfied the terms of the special agreement. While "strict adherence to the terms of 1608(a) is required," *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C.Cir.1994),[3] strict adherence to the

---

stantial part of property that is the subject of the action is situated ... or (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof." Venue is proper under either subsection.

**2.** The Court's decision in *Underwood*, 1995 WL 46383 at *2, that a sales contract provision that provided "that any notices 'required or permitted herein' would be effective when mailed or hand-delivered to the property or the Embassy" ... does not purport to create a 'special arrangement' for service in a lawsuit is distinguishable because that contract provision limited the notices covered by the provi-

sion to those "required or permitted" under the sales contract, while the provision at issue here covers "[a]ll notices, demands, or requests" between the parties. *See also Berdakin v. Consulado de la Republica de El Salvador*, 912 F.Supp. 458, 466 (C.D.Cal.1995) (provision that stated that "[w]henever, *under this Lease,* a provision is made for any demand, notice, or declaration of any kind, it shall be in writing and served either personally or sent by registered United States mail" did not cover service of process).

**3.** In *Transaero*, plaintiff had made no attempt to serve under § 1608(a), instead serving under the less stringent provisions of § 1608(b),

sublease provision itself, which would not have resulted in notice to defendant, is not mandatory under these circumstances.

■ Finally, the Court finds that defendant has waived its immunity to suit under the FSIA. Section § 1605(a)(1) of the FSIA provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the foreign state has waived its immunity either explicitly or by implication ...." The sublease contains an explicit waiver: "[F]or the purposes of action by Landlord or Sublessor against Sublessee to enforce the terms and conditions of this Sublease, Sublessee hereby waives and relinquishes any and all rights to immunity under Foreign Sovereign Immunities Act of 1976, 28 U.S.C. [§ ] 1602–1611 or otherwise...." (Ex. 1, ¶ 11.)

### B. Liability and Damages

■ The Court finds that plaintiff has established the following facts by satisfactory evidence.[4] On December 23, 1998, plaintiff and defendant entered into the sublease agreement for approximately 4,199 square feet of office space at 2600 Virginia Avenue, N.W., Suite 208, for a term of 6 years, 2½ months, beginning January 15, 1999, and ending March 31, 2005. (Ex. 1 at 1, ¶ 2.) Defendant did not subsequently take possession of the premises, provide the letter of credit required by the sublease, or make any rent payments. (Ex. 2, 3; Cmplt. ¶ 9; Ex. 5, ¶ 4.) The Court concludes that defendant was therefore in default with respect to its obligations under the sublease. Plaintiff terminated the sublease on April 27, 1999, pursuant to its rights under paragraph 8 of

which were not applicable to defendant. *Id.* at 153.

4. Plaintiff has submitted the affidavit of Gerald Shea in support of the damages requested. (Ex. 5.) The Shea affidavit does not detail the basis for liability, but provides that "[t]he complaint in this case sets forth all of the relevant facts concerning the Sublease and

the sublease relating to default. (Ex. 1, ¶ 8; Ex. 5, ¶ 5.)

Notwithstanding the termination of the sublease, pursuant to the sublease, defendant remained liable for all rent due for the term of the sublease, interest from date due, expenses incurred in reletting the premises, and attorney's fees. (Ex. 1, ¶¶ 8, 17; Ex. 4, ¶ 19(C); Ex. 5, ¶¶ 5–7.) Plaintiff was able to sublet significant portion of the space under two subleases effective July 1, 1999 and October 1, 1999 respectively. (Ex. 5, ¶ 5.) The amount of unpaid rent as of January 15, 2001 is $233,700, minus the offset of $143,500.05 received under the two subleases, leaving a balance due of $90,199.95. (Ex. 1, ¶¶ 3, 4; Ex. 5, ¶¶ 4, 5.) A total of $16,491.04 in interest is also due on this sum. (Ex. 1, ¶ 8; Ex. 5, ¶ 5.) Plaintiff incurred build-out costs of $21,673.28, advertising costs of $1440.00 and sublease fees in the amount of $5000.00, in reletting the premises. (Ex. 5, ¶ 6.) Plaintiff has also incurred attorney's fees and costs in the amount of $24,797.57. (Ex. 6.) The total of damages, fees, and costs due plaintiff is $159,601.84. (Ex. 5, ¶ 8.)

### CONCLUSION

Plaintiff has established both liability and damages by evidence satisfactory to the Court. Default judgment will therefore be granted in favor of plaintiff. A separate order of judgment accompanies this Opinion.

Congo's default." (Ex. 5, ¶ 2.) Because the defendant has not appeared and has presented no defense "the Court will accept as true [plaintiff's] uncontroverted factual allegations," *Alejandre v. Republic of Cuba,* 996 F.Supp. 1239, 1243 (S.D.Fla.1997) (citations omitted), which are supported by the documentary and affidavit evidence.